**EVERARD v KROEGER**

Ohio Appeals, 2nd Dist, Franklin Co

No 2897. Decided July 27, 1938

Paul L. Selby, Columbus, Joseph Donovan, Columbus, for plaintiff-appellee.
Herbert S. Duffy, Atty. General, Colum-

bus, Henderson Estes, Middletown, Kenneth L. Johnson, Columbus, and Edward L. Coyle, Asst. Atty. General, Columbus, for defendant-appellant.

Luther L. Doger, Columbus, and J. Maxwell Maher, Columbus, amici curiae.

## OPINION

By GEIGER, J.

While we shall consider the above-captioned case and arrive at our conclusions upon the issues therein made, there are a number of similar suits, filed on behalf of various other plaintiffs and against the same defendant and by agreement of counsel all were considered together by the court below and are now in this court on appeal on questions of law and are to be considered and determined together by this court, so that any decision that may be here arrived at, will be applicable to all the other cases which by agreement of counsel are to be considered together.

On September 27, 1937, a petition was filed in the Common Pleas Court by plaintiff, Arthur E. Everard, wherein it is alleged that William H. Kroeger is the superintendent of Building & Loan Associations; that the Columbian Building & Loan Company is a corporation with authority to carry on business as a building and loan company; that on the 25th day of March, 1933, the superintendent took possession of the property of said company pursuant to §687, et seq., GC, and since said date has been and is now in charge of the liquidation of said company.

Plaintiff further states that on January 2, 1931, he deposited in said company the sum of $4000.00 evidenced by a certificate of deposit issued by the company; that no interest or any part of the $4000.00 has been paid since June 30, 1932; that plaintiff filed proof of claim on said deposit claim which the superintendent allowed and the same has been finally allowed as a deposit creditor's claim, for which plaintiff holds certificate of claim.

That in the course of liquidation of the company the superintendent has declared and by order of the court has been authorized to pay to the holders of creditor's claims certain dividends aggregating 50%, but the superintendent refuses to pay such dividends to this plaintiff and has abused his power and discretion with respect to this plaintiff's claim in so failing to pay dividends to plaintiff's irreparable loss and damage.

Plaintiff prays the court grant a mandatory injunction ordering the superintendent to pay the dividends now and hereafter declared, to plaintiff on his claim.

To this petition an amended answer is filed by William H. Kroeger, superintendent in charge of liquidation of said company in which he makes certain admissions, among them being that he has declared and by the approval of the court has been authorized to pay to holders of approved creditors' claims five separate dividends, aggregating 50%.

It is further alleged that the plaintiff subscribed for capital stock of the company to the amount of $3500.00 and received a stock certificate therefor; that on later dates the plaintiff made further subscription to the capital stock in various amounts and that the plaintiff's wife, on behalf of herself and the plaintiff, made a subscription for which a certificate was issued. It is alleged that by reason of the foregoing subscriptions the plaintiff became a stockholder subject to the liabilities of stockholders as prescribed by the constitution and by-laws of the company which were then in force or might thereafter be legally adopted.

Plaintiff sets up certain provisions of the constitution of the company and says that the stock certificates issued to the plaintiff were on January 2, 1931, surrendered and cancelled and the proceeds withdrawn and transferred to a certificate of deposit, for which certificates were issued which were allowed as a deposit creditor's claim and that a certificate of claim No. 28661 has been issued by the defendant.

It is further averred that **Article 13, §3 of the Constitution of Ohio**, which was in full force until July 1st, 1937, provided for double liability of stockholders and that §687-15, **GC**, provides that dividends due to stockholders on claims as depositors to the extent of the individual liability of such shareholders shall be withheld by the superintendent until it is determined that it

will not be necessary to enforce their individual stock liability.

That defendant is required by §687-10, par. 9 GC, to enforce such individual liability if he ascertains that the assets of the association will be insufficient to pay its debts and liabilities; that he believes that the assets of the company probably will be insufficient to pay its debts and that he will therefore be required to enforce the superadded liability of the stockholders, and that it will be necessary for him to exercise his rights and liens upon all claims and dividends due or which may be claimed by plaintiff, for the satisfaction of superadded liability.

It is further alleged that by instructions given by the Court of Common Pleas he was directed to

"allow the claims of those who independently of the legal transfers by the directors, fully completed their rightful withdrawal as stockholders before May 18, 1931, when the company went on notice, and before insolvency; subject to the retention by the superintendent of the dividends on such claims as an offset to the superadded liability, if such liability is assessed and established."

It is asserted that by reason of said instructions and by reason of the plaintiff's former ownership of the stock in the company in the amount of $8,000.00, that plaintiff's constitutional superadded liability in the event this defendant establishes and assesses such liability against the plaintiff is in the amount of $8,000.00 to which amount the defendant will be entitled if and when said superadded liability is established and assessed.

The defendant further alleges that according to the instructions there is now no more due and payable to the plaintiff and that he is lawfully withholding the payments of dividends on the said claim of the plaintiff which has been allowed, pursuant to the laws of Ohio and the legal duty imposed upon him by such laws, and defendant prays that the petition be dismissed.

. To this answer a demurrer is filed by the plaintiff on the grounds in substance:

(1) That the allegations are insufficient to constitute a defense.

(2) That it appears on the face of the answer that the plaintiff has not been a stockholder in said company for more than six years next prior to the filing of the action herein and that therefore the alleged claim of the defendant against the plaintiff on alleged stockholders' superadded liability has been barred by the Ohio statute of limitation §11222, GC.

(3) That the defendant is without authority to levy or enforce stockholders' superadded liability in connection with the company under existing provisions of the constitution and that therefore his alleged claim of a right to enforce said superadded liability is insufficient to constitute a defense.

Elaborate briefs were filed and extensive arguments were presented to the Court of Common Pleas which court, on March 11, 1938, found that the amended answer of the defendant does not state a defense to the plaintiff's petition, and that the demurrer is well taken and is sustained and upon agreement of counsel that all the issues were presented by the pleadings and that final judgment should be rendered, the court finds that the plaintiff is entitled to the relief prayed for and to have distributed to him liquidation dividends to the same extent as have or may be ordered paid to the holders of allowed deposit creditors' claims against the company, and it is ordered that the prayer of the plaintiff's petition is granted and that a mandatory injunction issued and the defendant ordered paid the dividends now or hereafter declared with respect to the plaintiff's allowed claims, free from the imposition of any superadded liability to the same extent as have been or may be paid to the holders of depositors' claims against the company as prayed for in the petition.

On March 24, 1938 the defendant gave notice of appeal to the Court of Appeals from the order and judgment rendered by the Court of Common Pleas on the 11th day of March, 1938, said appeal being on questions of law.

## ASSIGNMENT OF ERRORS OF THE DEFENDANT-APPELLANT.

The appellant assigns error substantially to the effect:

(1) That the court erred in sustaining the demurrer; in finding that the amended answer does not state a defense;

(2) In finding that the plaintiff is entitled to the relief prayed for and to have distributed to him dividends with respect to his allowed claim;

(3) In finding that the prayer of the petition be granted and in granting said claim and in issuing a mandatory injunction against the defendant;

(4) In finding that plaintiff's claim is not subjected to the superadded liability;

(5) In finding that the plaintiff was entitled to have his claim free from the imposition of the superadded liability.

(6) That the finding and orders were made and entered contrary to law.

In view of the many briefs and complicated questions presented the court may, in its opinion, depart from the order in which the assignments of error have been set out in the appellant's brief.

## CLAIMS OF THE RESPECTIVE PARTIES

The claims of the respective parties may be summarized as follows:

### CLAIMS OF THE APPELLANTS.

(1) It is claimed by the defendant-appellant and under the law of Ohio the superadded liability of Building & Loan shareholders is a continuing obligation incurred at the time the person becomes a shareholder and that the liability thus incurred remains even after the person has ceased to be a shareholder and has terminated the shareholding relationship.

(2) That irrespective of what is the law of Ohio with reference to the liability of the shareholder, since the superintendent was before the Court of Common Pleas in the Herman case, and in that case received instructions as to the status of former shareholders and is obeying such instructions, he can not be held by another branch of the same court to be doing an unlawful act by reason of his conduct, nor can an answer which sets up as a defense to a mandamus action to compel the superintendent to pay the dividends to the former stockholders and further sets up that the superintendent is following such instructions, be held to fail to state a defense to such mandamus actions.

(3) That the court below misconstrued the law and the holdings of the Supreme Court in cases alluded to and that the inferences he draws therefrom are unwarranted. The case specially alluded to is **Squire, Superintendent, v Murfey, Blossom & Co, 131 Oh St 289.**

(4) Appellant summarizes his contention to the effect that the opinion, finding, decision and decree of the lower court were contrary to law.

To sustain his position the appellant has filed elaborate briefs.

### CLAIMS OF PLAINTIFF-APPELLEE.

(1) That the stockholders' status (plaintiffs below) ceased on January 2nd, 1931, when, in good faith he made a settlement of his stockholder's relationship with the corporation.

(2) That no superadded liability under the Constitution had attached or accrued against the plaintiff with respect to his stock at the time of his withdrawal and the cancellation thereof on January 2, 1931, and that thereafter no superadded liability could be asserted as against plaintiff by a creditor or by the defendant.

(3) That if any claim could have been asserted it must have arisen out of the stock ownership prior to termination of that relationship on January 2, 1931, and that any claim with respect thereto must have been instituted within six years from the termination of the stockholders' status or be barred by the statute of limitations and that more than six years has elapsed since January 2, 1931, and no claim having been instituted against the plaintiff as a stockholder any such claim is now barred.

(4) That since the repeal of the constitutional superadded liability provision of the Constitution of Ohio effective July 1st, 1937, there is no authority for the assessment or collection of the superadded liability by the defendant and the withholding of plaintiff's dividends is unauthorized.

(5) That the superintendent's position is untenable, and an abuse of discretion so as to warrant and make necessary the order of the court below.

### CLAIMS OF AMICI CURIAE

Luther L. Boger and J. Maxwell Maher, on application were granted leave to file briefs, amici curiae, and their claims may be summarized as follows:

(1) Stockholders in Ohio Building & Loan Associations which receive money on deposit are subject to double liability and are liable for the debts of the corporation to the extent of their stock in addition to the amount invested.

(2). Section 3 of Article XIII, of the Constitution of Ohio is self executing and the liability therein fixed is free from interference by the Legislature during the lifetime of the amendment.

(3) That under **Article XIII, §3,** a stockholder is liable for all debts existing while a stockholder. This liability continues and is not discharged by subsequent bona fide transfer without consent of corporate creditors.

(4) The repeal of **Article XIII, §3,** effective July 1st, 1937, in no way affects rights or obligations existing prior to the effective date of such repeal.

(5) The decision of the lower court in the instant case is supported neither by judicial precedent nor by statutes in Ohio.

(6) A stockholder can not release himself from double liability by agreement with the issuing corporations solely, since the corporation is the unconditional debtor and the stockholder is the conditional debtor, both liable for the same debt and two debtors can not effect a novation discharging one another from an obligation to a common creditor.

(7) The right of action on stockholders' liability accrues upon determination by the superintendent that assets are insufficient to pay liabilities and the period is six years thereafter.

(8) The result of Judge Scarlett's opinion (in the Herman case) is to pay legitimate creditors before the converted-stockholder plaintiff and this is in accordance with the universally accepted general rule of law—irrespective of constitutional superadded liability.

This statement of the respective claims of the several parties, together with the claims of amici curiae will disclose the sharp conflict between the parties as to the law applicable to the issues made by the pleadings. It is fortunate that all parties agree that all the necessary facts are disclosed in the pleadings. The extensive briefs skillfully prepared make apparent the heavy burden imposed upon this court to arrive at a correct solution of the problems presented. The financial importance of a correct decision is also disclosed by the size of the respective claims now under examination, the total amount of which by the agreement of counsel, are to depend upon the decision in this case now under examination.

### OPINION OF THE COURT BELOW

The carefully considered opinion of the court below should receive our closest consideration. The court gave the questions before it extended consideration, which led him to definite conclusions of the highest importance.

He correctly states the issues as follows:

"Shall the funds now held by the superintendent on plaintiff's depositors creditor's claim ·which has heretofore been allowed by the superintendent be subject to the superadded liability after the cancellation of plaintiff's stock and the termination of his relationship as a stockholder."

The court arrived at this conclusion:

"It seems to us from our consideration of the authorities that the rational and logical rule to be adopted is that the stockholders' superadded liability does not attach until the corporation defaults in its original liability by insolvency or liquidation and, as a consequence only the existing stockholders at that time are liable."

After reviewing the constitutional provisions under examination the court concludes:

"The meaning of this constitutional provision seems to us is clearly expressed and that is the stockholders or owners of the stock are liable when the liability is incurred, that is, when the affairs of the corporation are wound up. To hold that this claim due the plaintiff as a creditor is to be subjected to the double liability because the plaintiff some two years prior to the takeover had been a stockholder seems to us to do violence both to the letter and the spirit of the constitutional provision."

The court bases his conclusion on his interpretation of State ex Supt. v Murfey, Blossom & Co., 131 Oh St 289, and on Squire, Supt. v Solinski et, 132 Oh St 180. The court speaking of Murfey, Blossom & Co., says:

"This decision, it seems to us, rejects the theory of liability laid down by the majority decision in the case of Brown v Hitchcock, 36 Oh St. 667."

The court takes the position that the separate dissenting opinions of McIlvane & Johnson in the case of Brown v Hitchcock, more correctly state the law as presently interpreted by the Supreme Court than does the majority opinion. We shall advert to this matter later in this opinion.

### CONSTITUTIONAL AND LEGISLATIVE PROVISIONS.

The provision in the Constitution of 1851, the present Article XIII, §3, as to double liability is as follows:

"Dues from corporations shall be secured by such individual liability of the stockholders, and other means as may be prescribed by law; but in all cases each stockholder shall be liable, over and above the stock by him or her owned, and in amounts unpaid thereon to a further sum at least equal in amount to such stock."

On November 3, 1903, the double liability

of stockholders of all private corporations as fixed by the Constitution of 1851 was amended by the provision

"but in no case shall any stockholder be individually liable otherwise than for the unpaid stock owned by him or her."

On September 3, 1912, the above statement was amended by the addition of the following words:

"Except that stockholders of corporations authorized to receive money on deposit shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of such corporation to the extent of the amount of their stock therein, at par value thereof, in addition to the amount invested in such shares."

The above amendment became effective January 1st, 1913. In November, 1936, this section was amended so as to read as follows:

"Dues from private corporations shall be secured by such means as may be prescribed by law, but in no case shall any stockholder be individually liable otherwise than for the unpaid stock owned by him or her."

The pertinent statutory provisions in reference to these constitutional provisions which may enable us to more clearly interpret the decisions are as follows:

The Corporation Act of May 1, 1852, was the first Act passed after the adoption of the Constitution and is that involved in the case of Brown v Hitchcock, and provided in substance:

"All stockholders of ** * any joint stock company organized under the provision of this Act shall be deemed and held liable to an amount equal to their stock subscribed in addition to said ' stock, for the purpose of securing the creditors of such company * * *."

Sec 697-15, GC, effective June 29, 1934, provides in substance that the superintendent of the Building & Loan Association shall out of the funds remaining in its hands after the payment of expenses declare one or more dividends on the claims presented and allowed.

"Dividends due to shareholders on claims as depositors or otherwise, to the extent of the individual liability of such shareholders, shall be withheld by the superintendent until it is ascertained that it will not be necessary to enforce their individual stock liability."

The provision as to the witholding of dividends became effective after the plaintiff had become a creditor in the association whose by-laws did not provide for a withheld dividend.

## WHAT IS THE PRESENT OHIO LAW AS TO STOCKHOLDERS' LIABILITY?

In view of the opinion of the court below that stockholders' liability as formerly declared by Ohio courts of last resort has been modified by more recent decisions, we are impelled to make a rather detailed examination of the former decisions confining ourselves to the Ohio cases.

The first case to which we might call attention is that of Wright et v McCormick, 17 Oh St 87, wherein the court interpreted a statute imposing double liability upon a stockholder. It was there held in substance that the liability imposed by the statute in question on stockholders in addition to their stock subscribed is a security provided for the exclusive benefit of creditors over which corporate authorities have no control; that the liability is not a primary resource for the payment of debts but is collateral and conditional to the principal obligation which rests on the corporation and is to be resorted to by creditors only in case of insolvency of the corporation or where payment cannot be enforced by ordinary process. This case being based upon a statute without reference to the constitution is only of value as indicating the genesis of constitutional liability.

The case of Brown v Hitchcock, 36 Oh St 667, is of interest and importance although it seems to be confined to the correct interpretation of statutory liability as distinguished from constitutional liability. It is there held in substance that the individual ' liability of stockholders under the Act of 1852 and 1861 attaches in favor creditors at the time the debt is contracted or the liability incurred by the corporation; after such liability attaches it is not discharged by the subsequent assignment or transfer of the stock, but the successive holders impliedly undertake to discharge the assignor from the liability attached to him as a stockholder while he held the stock; in a suit by creditors the existing stockholders are severally chargeable with the payment of such liability. The 4th syllabus announces the important principle:

"If by reason of insolvency the amount due from any stockholder is not collectible the assignors of his stock up to the time the liability attached may be charged with the deficiency."

The case involved a number of stockholders differently situated, among them some who had made sales and transfers of their stock long prior to the suit and the insolvency of the company, but while there were some debts and which subsequent debts existed at the time of the suit.

Judge White in delivering the opinion of the court stated in substance, the first question arising for determination is, when does such liability attach in favor of the creditors, the question being when does the personal liability of the stockholders to creditors as a security in addition to the liability of a corporation become effective?

After quoting the Constitution and the Act first passed after the adoption of the Constitution, the court states:

"Under these provisions it seems to us that the security furnished by the stockholders' liability in addition to that of the corporation attaches in favor of the creditors at the time the debt is contracted or the liability incurred by the corporation."

The court quotes with approval from a Maryland case to the effect that it is a debt due from the stockholder to the creditor co-existing with the contract between the corporation and creditor and no act by the stockholder without the consent of the creditor can exonerate him from the liability thus incurred. The judge delivering the opinion then quotes the Constitution and states:

"To hold that this language embraces only those who may turn out to be stockholders at the winding up or settlement of the affairs of the corporation is, it seems to us, unwarranted."

Judge White states that the next question is whether after the liability attaches to a stockholder it is discharged by the subsequent assignment or transfer of the stock.

"We think not. The liability, it is true, attaches to him in respect to his stock, but after it has attached in favor of creditors, it becomes as obligatory upon him personally as an express agreement. Each successive owner stands in his shoes as re-spects the stock and the liability growing out of it."

Judge White further states:
"If by reason of insolvency, the amount due from any stockholder is not collectible, the assignor of his stock successively, up to the time the liability attached may be charged with the deficiency."

McIlvane, J., dissented and stated as to the majority opinion:

"The language is 'but in all cases each stockholder shall be liable', etc. There is no doubt about the meaning of these words. The meaning is that whenever this liability attaches in favor of the creditor and against the stockholder such stockholder is bound to the last farthing of the liability fixed before such creditor shall lose a farthing of his claim. A less liability on the part of such stockholder will not give such creditor the security intended."

Judge McIlvane elaborates upon the view taken by him and Judge Johnson, also dissenting for reasons that are forcefully presented.

The majority holds that the liability attaches to one owning stock at the time of the inception of the debt if such stockholder be then a stockholder. The minority on the other hand takes the position that the liability does not attach until steps are taken to enforce it and that one who is not a stockholder at that time is not subject to the constitutional liability. The task remains to determine which view is now the law of Ohio.

In the case of **Mason v Alexander et, 44 Oh St 318,** a suit to enforce liability of stockholders under a special statute, it was held:

"(5) If in such case by reason of insolvency or residence without the jurisdiction, the amount due from any stockholder is not collectible, the assignor of the stock up to the time the liability attached, may be charged with deficiency. **Brown v Hitchcock, 36 Oh St 667** followed."

**Harpold et v Stobart, 46 Oh St 397,** holds:
"(3) The stockholder who in good faith, sells and transfers his stock to one who afterwards becomes insolvent, is liable to creditors of the corporation for such portion only of the debt existing while he held the stock and remaining due (not in excess of the amount of—stock assigned) as will be equal to the proportion which the

capital of stock assigned by him bears to the entire capital stock held by solvent stockholders within the jurisdiction liable in respect of the same debts to be ascertained at the time judgment is rendered."

On page 403 Justice Spear, after quoting both the Constitution and the statute, states to the effect: In construing these provisions the holdings in this state are to the effect that the individual liability of stockholders attaches in favor of creditors at the time the debt is contracted or liability incurred by the corporation and that such liability is not discharged by the subsequent assignment or transfer of the stock. As between the stockholders there is a proportional liability and right of contribution which grows out of the relation existing between them, and as between each stockholder is bound to pay in proportion to his stock.

And further:
"So too, when it has been determined that the liability as to debts arises at the time they are incurred, it clearly follows that such liability is confined to debts which exist during the time the stock is owned."

It is held that no assessment should be adopted which makes the stockholder liable for debts contracted by the corporation after he ceased to be a stockholder.

The case of **Barrick v Gifford, 47 Oh St 180,** does not directly concern the question now under consideration, but will be of value when we approach another phase of this case. However, it is of interest in judicially analyzing the case of **Brown v Hitchcock, 36 Oh St 667,** and differentiating between the majority and the minority opinions.

"Such liability attaches to every share of stock issued by a company; the stock and the liability go together so that whoever owns the stock must sustain the burden when the company becomes insolvent."

In **Boice v Hodge, 51 Oh St 236,** it is held:
"A holder of stock in an Ohio corporation who transfers his stock after a corporate debt has been created, is not relieved from his statutory liability for such debt, by an agreement for an extension of the time for its payment; although such agreement be made by the corporation and creditor after such transfer without the knowledge and consent of the transferor."

The case of **Peter v Manufacturing Co., 56 Oh St 181.** Judge Bradbury delivering the opinion of the court says on page 204.
"He could not by the sale and transfer defeat the ultimate right of existing creditors to proceed against him on account of these shares, if a resort to that liability becomes necessary for their protection. His ultimate liability to them was fixed by the circumstances that he owned these shares at the time their claims were contracted. **Brown v Hitchcock, 36 Oh St 667."**

And on pages 207-208,
"Under the decisions of this court. the owner can not by transfer of his stock defeat the ultimate right of existing creditors to relief against him. * * * If he had in fact disposed of his stock and the stock had been transferred on the books of the corporation, as to such future creditors it was as if he had never been a stockholder."

**Wick National Bank v Union National Bank, 62 Oh St 446,** holds:
"(1) Where the holder of stock in a corporation, has transferred his stock in good faith to one who at the time of subjecting the stockholders' liability to the payment of the debts of the corporation, is insolvent the liability of such assignor of the stock may be subject to the rule established in **Harpold v Stobard, 46 Oh St 397,** be subjected to the payment of debts which accrued while he held the stock in case a sufficient fund is not raised by assessment upon solvent stockholders to satisfy all creditors.

"(2) In such case the fund arising from assessments on solvent persons who are stockholders at the time of the decree should be applied pro rata upon all debts of the corporation; and funds arising from assessments on persons who had been stockholders, but had assigned their stock in good faith before the insolvency of the corporation should be applied to the residue, if any, owing to those who were creditors at the time such stock was assigned."

The court approves and follows Brown v Hitchcock. On page 463, Judge Spear, delivering the opinion of the court, says:
"As to the expressions quoted from the opinion of McIlvane, J., in Brown v Hitchcock it should be remembered that they are dicta of a dissenting judge."

On page 464 the judge, speaking of transferers of stock, states that they have incurred no statutory liability to the later

creditors, and owe no contractual duty to them; nor are they in any way liable to them because of once having been owners of stock.

**Poston v Hull, 75 Oh St 502,** holds:

"One who has been a holder of stock of an insolvent corporation but has disposed of his stock in good faith prior to such insolvency and prior to the commencement of an action to enforce the statutory liability, can not be held liable for the debt of the corporation before the full 100% liability of the existing solvent stockholders within the jurisdiction has been exhausted, although the debt of the creditor against the corporation was incurred before the assignment and the assignee of the stock is insolvent."

This is an interesting case and establishes an important rule which later may be applied in the instant case. The court in that case again recognizes **Brown v Hitchcock, 36 Oh St 667.**

Liability to creditors follows the stock and those who were owners at the time of the commencement of the suit are primarily liable, and such liability must first be exhausted before recourse can · be had against the former owner of the stock who has in good faith transferred his stock, and the liability is to the exttent only of the residue remaining unpaid of the corporate debt owing at the time of the assignment.

The judge makes a significant statement which may bear upon a question hereafter to be discussed:

"To avoid possible misunderstandings it may be added that this controversy having arisen before the recent amendment to the constitution of the state which abolishes the double liability of stockholders is not affected by that amendment."

. In the case of **Swift v Youngstown Baking Co,** (1905), 6 O.C.C. (N.S.) 89, it is held that a statute attempting to limit the liability of stockholders as determined in the case of Brown v Hitchcock was unconstitutional as violative of the provisions of §3 **Article XIII of the Ohio Constitution.** See also **Scofield v Oil Company, 6 O.C.C. (N. S.) 169.**

**THE PROVISION OF §3, ARTICLE XIII OF THE CONSTITUTION** AS AMENDED SEPTEMBER 3, 1912, IS SELF-EXECUTING.

It may be observed that in the cases we have heretofore examined it frequently ap-

pears that they involve the construction of a statute rather than the Constitution of 1851. This may arise from the fact that that Constitution provided,

"Dues from corporations shall be secured by such individual liability of the stockholders, and other means as may be prescribed by law."

As to the Constitution of 1912 we have the positive holding of the court that the provision thereof pertaining to "corporations authorized to receive money on deposit" is self-executing. **Lang et v Osborn Bank, 100 Oh St 51.** Judge Wanamaker in this case points out:

"Here, in the amendment of 1912 the Constitution makers exercised such power, and in the clearest and most convincing language forever fixed that liability free from the interference of the General Assembly during the life of the controlling amendment."

In **Snyder v United Banking Co., 124 Oh St 375,** it is held:

"(1) Sec 3 of Article XIII of the Ohio Constitution creates an additional liability against stockholders of corporations authorized to receive money on deposit for all contracts, debts and engagements of such corporation. The liability thus created is complete and self-executing."

See also **Allen v Scott, Supt. of Banks, 104 Oh St 436.**

The case of **Vance, Exr. v Warner et, Receivers, 129 Oh St 357,** holds:

"(1) Sec 3 of Article XIII of the Constitution of Ohio is self-executing insofar as it fixes the responsibility of stockholders of a corporation authorized by the laws of Ohio to receive money on deposit.

"(3) Since a Building & Loan Association of Ohio is authorized to receive money on deposit, it comes within the purview of §3 of Article XIII of the Constitution of Ohio."

If the Constitution, providing for the liability of stockholders in corporations authorized to receive money as entered the domain of legislation as stated by Judge Wanamaker in the Lang case, it is quite clear that the liability thus provided for can not be altered, diminished or increased by any legislative enactment even though it be competent for the Legislature to provide the machinery for its enforcement.

IS THE LIABILITY AFFECTED BY EITHER SQUIRE v MURFEY, BLOSSOM & COMPANY, 131 Oh St 289, OR SQUIRE v SOLINSKI, 132 Oh St 180?

It is asserted by counsel for plaintiffs and inferred by the court below that these two cases establish a different measure of liability from that asserted by the former Ohio cases which we have examined to determine just what was before the court for decision.

In the first place it may be noted that both cases refer to the Banking Act and not to the Building & Loan Act.

Sec 710-2 GC defines the term "Bank" and provides that "nothing herein shall apply to * * *; nor to Building & Loan Associations * * *". Not only do the sections under examination pertain to banks but the statute expressly excludes their operation as to Building & Loan Associations.

However, we will assume for the purpose of this examination that they apply to Building & Loan Associations.

The case of Squire v Murfey, Blossom & Co., holds to the effect that the owner of stock in a state bank who more than sixty days prior to its taking over, sells his stock and delivers a certificate properly endorsed to the purchaser, has done all that is required to pass the title to such purchaser, and is not estopped to deny that he is a stockholder in an action by the superintendent to collect the superadded liability, although the stock appears in his name on the stock record, for the sole and only reason that the purchaser has failed to have the transfer made of record. The case involved stock pledged to secure a debt and the question was whether under the circumstances disclosed by the case the one in whose name it stood on the stock books could deny ownership. In delivering the opinion Judge Stephenson used expressions which are more or less confusing.

On page 301 the judge cites certain Ohio cases and points out the difference in the present statutes from those existing at the time the cases were decided. The judge said in reference to these cases:

"This was all good law when announced but is it the law now?"

Leaving the apparent inference that these cases are discarded as the present law of Ohio because of the change in legislative enactments. As a matter of fact these cases all involve other questions than the registration or transfer of stock, controlled by statute since changed, and we think it

might have been better had the court pointed out those features of these cases which had been altered by statutory amendment rather than leave the inference that the cases in their entirety were discarded as present-day law. Without discussing this case further, we are of the opinion that it only affects the right of one who is registered as a stockholder to show that he is, as a matter of fact, not a stockholder. It in no way affects, alters or diminishes the liability of one who has been a former stockholder but has altered his status by parting with his stock in a bona fide transaction to one not able to respond to the liability assumed by him, as the result of his purchase.

In the case of Squire v Solinski, 132 Oh St, the decision by the court states that "the controlling question is whether §710-75 GC is unconstitutional in that 'it increases the obligation of the stockholders of a bank beyond that permitted by §3, Article XIII of the Ohio Constitution'." The section under question is that providing for the double liability of stockholders of the bank and providing that the stockholders who shall have transferred their shares or registered the transfer within sixty days next before the failure of such bank to meet its obligations or with knowledge of such impending failure shall be liable to the same extent as if they had made no such transfer, to the extent that the subsequent transferee fails to meet such liability. It will readily be perceived that this question does not involve the stockholders' liability for debts contracted by the corporation prior to the disposition of his stock. The court says:

"Sec 710-75 GC., in our opinion, makes no change in bank's stockholders' constitutional superadded liability. It neither enlarges nor diminishes it. It does not create new, or extend existing liability. Under the law a stockholder is liable for all debts of the banking corporation existing while a stockholder. This liability is continuous and is not discharged by subsequent bona fide transfer, (Brown v Hitchcock, 36 Oh St 667), without consent of corporate creditors."

The court says:
"If §710-75, GC, does not augment or diminish the constitutional rights of creditors it can not be said to augment the constitutional liability of stockholders."

and holds that while the article of the con-

stitution is self-executing it is nevertheless competent for the Legislature to provide procedure for its enforcement.

We have examined these two cases more at length than would seem justified in view of the points decided, but have done so because of the insistence that they have changed the entire course of judicial decision in interpreting the law of Ohio. The strong statement in Squire v Solonski that the statute does not make any change in stockholders' liability and the re-statement with approval, of the law as enunciated in Brown v Hitchcock, emphasizes the fact that there was no purpose in the court to do other than to interpret a section of the statute bearing upon the ownership of stock, and it may be again repeated that neither of these cases refer to any statute controlling Building & Loan Associations or the transfer of stock in such institutions and are far from modifying the declared law of Ohio as stockholders' liability.

We can not concur in the claim asserted by the plaintiff-appellee that the Supreme Court recognized that after an effective transfer a bank stockholder is no longer subject to double liability. Nor do we agree that by these two cases the Supreme Court has now established the doctrine that those who are not stockholders at the time of the liquidation are not sub-subject to superadded liability.

## CONCLUSION AS TO LIABILITY.

We are driven to the conclusion that under the present law of Ohio there is a continuing liability on one who has been a stockholder at the time the obligation was incurred and that this liability can not be avoided by the transfer of such stock to another who can not respond to the obligation he assumes when he purchases the stock, and when the assessments against the present stockholders do not produce sufficient funds to completely discharge the obligation to a creditor becoming such during the time the stock was held by such former stockholder.

## WHEN DOES THE STATUTE OF LIMITATIONS BEGIN TO RUN IN FAVOR OF A FORMER STOCKHOLDER?

The question is raised by plaintiff-appellee that the six year statute of limitations has barred the right of action against them, the superintendent having taken over the association on the 25th day of March, 1933. **Barrick v Gifford, 47 Oh St 181,** holds that where a corporation possessed of property subject to levy though not sufficient to pay all its debts continues to transact its business the right of a creditor to enforce statutory liability of its stockholders does not accrue until an execution has been returned unsatisfied for want of goods, the court holds (2) where, however, a company has become insolvent and made assignment of all its property for the benefit of its creditors, the right of the creditor or any of them then accrues to commence suit against the stockholders on their liability under the statute without any prior proceeding against the company and the statute of limitations begins to run from that time against the right of action.

Speaking of the fact that insolvency would not start the running of the statute the court says:

"Such a rule would be not only uncertain but deceptive to the creditor. The right to commence the action would be a matter of speculation. It could not be determined before bringing the action and taking an account of whether the company was indebted in a sum greater than its assets would pay or not. A rule of certainty applicable to such cases should be adopted."

We note that Judge Scarlett held (p. 68) that in his judgment the company was insolvent in July, 1931, but how long before only expert examinations or a general appraisement or check on the real estate would reveal. We are of the opinion that the potential insolvency of company at that date as revealed by Judge Scarlett fails to start the running of the statute of limitation. Another theory is advanced that the statute began to run when the superintendent took charge of the affairs of the corporation for the reason that such act upon his part precluded creditors from bringing an action or would render such action ineffective. However, we do not definitely pass upon this point.

In **Bank v Squire, 3 O. Op. 531,** Common Pleas and **State v Melango, 31 O.L.R. 627,** it has been held that the statute of limitations does not begin to run until the superintendent has ascertained that it is necessary to bring a stockholders' suit. This would fix the time as a matter for determination by him, taking such time as in his judgment might be necessary to make the investigation, and would in effect be to postpone the beginning of the running of

the statute until the superintendent might himself bring an action to recover the double liability.

Another statement of the rule is found in **Bronson v Schneider, 49 Oh St 438,** where it was held that to set the statute running in favor of the stockholder it is necessary that the creditor's claim be reduced to judgment and execution returned unsatisfied, or that the property of the corporation by some legal proceeding be put in process of application to the payment of its debts so as to render judgment against it impossible or nugatory, as where the corporation has been dissolved or thrown into bankruptcy or placed in the hands of a receiver or has made an assignment. **National Bank of Lima v Squire, 3 O. Op. 531; State v Melango, 31 O.L.R. 627.**

We think the provisions of §687-10, Par. 9, GC, do not necessarily set the date at which the statute of limitations shall begin to run.

Sec 687-3 GC certainly has provisions as stringent both against the association and the creditors as any imposed by the appointment of a receiver which has been held to authorize a stockholder's suit and to start the running of the statute of limitations.

While we have taken considerable space in analyzing this matter we realize that it is very likely to prove a moot question in this case. We have already determined that the six year statute does not begin to run prior to March 25, 1933, the time of the take-over and the superintendent has still nine months in which to bring the action and to be within the statute of limitations if it begins to run at the time the superintendent took control. It is to be assumed that if he finally determines to bring the action he will do so before March 25, 1939, in which event our discussion of the question whether the statute begins to run on March 25, 1933, or at the indefinite period when the superintendent may have determined to bring his action, is of no consequence. So far as this case is concerned, we decided the important question when we held that the statute does not begin to run until March 25th, 1933, as the most remote date.

DOES THE REPEAL OF THE CONSTITUTIONAL DOUBLE LIABILITY SECTION EFFECTIVE JULY 1, 1937, TERMINATE THE RIGHT OF ACTION AGAINST A STOCKHOLDER FOR DOUBLE LIABILITY?

Article XIII, §3. now reads as follows, effective July 1st, 1937:

"Dues from private corporations shall be secured by such means as may be prescribed by law, but in no case shall any stockholder be individually liable otherwise than for the unpaid stock owned by him or her."

It is asserted by counsel for plaintiff-appellee that the whole theory and policy of double liability as against stockholders has been abrogated by the amendment and the superintendent is wholly without authority to proceed to assess superadded liability against stockholders.

It is held in an early Federal case, Hawthorne v Calef, 69 Wallace, 10, that,

"A state statute repealing a former statute which made the stock of stockholders in a chartered company liable to the corporation's debts is as respect creditors of the corporation existing at the time of the repeal a law impairing the obligation of contracts and void."

In the case of Coombes v Getz, 285 U. S. Rep. 434, where the California Constitution provided that directors should be liable to creditors for money embezzled. Another section of the Constitution reserved power to alter or repeal all existing or future laws concerning corporations. While creditors who contracted with a corporation while these provisions were in force, were suing to enforce their rights against a director, the section making the director liable was repealed. It was held:

"The right to enforce the liability was part of the creditor's contracts, perfected and fully vested before the repeal and was protected by the contract clause of the Constitution and by the due process clause of the 14th Amendment.

The so-called reserve power of the state over corporations and their shareholders can not be used to destroy the vested rights of third persons or to impair the obligations of their contracts."

This is a very interesting case and it seems to us determinative.

In the case of **Little v Aultman et, (Summit County Common Pleas Court), 15 O. D. 355,** it was held in reference to the amendment of the Constitution effective November 23, 1903, repealing the double liability clause as to all corporations,

"The amendment of §3, Article XIII, of the State Constitution * * * is prospective in its operation and does not affect prior

obligations, contracts, liabilities or vested rights existing between the stockholders and creditors of private corporations."

In the case of **Poston v Hull, 75 Oh St 502,** decided February 7, 1907, at which time there was no existing constitutional provision imposing double liability on stockholders of Ohio corporations, the court held that one who had been a holder of the stock of an insolvent corporation which he had disposed of in good faith prior to the insolvency, can not be held liable for the debt before the 100% liability of the solvent stockholders has been exhausted. The judge delivering the opinion of the court stated in the last paragraph of his opinion,

"To avoid possible misunderstanding it may be added that this controversy having arisen before the recent amendment to the Constitution of the State which abolishes the double liability of stockholders is not affected by that amendment."

It seems to us that the statement in the Poston case, together with the fact that courts have never discussed the possibility of deciding these other cases on the naked proposition that there was no constitutional provision covering the matter, leads us to the opinion that in Ohio we are committed to the proposition that the repeal of a constitutional provision ██ such as that in question, which made the stockholders liable **ex contractu** to the creditors of the bank, does not in itself deprive the creditor of the right to enforce a liability on a debt incurred before the repeal.

The case of Swift & Company v Youngstown Banking Co., was decided in March, 1905, during the hiatus between November 3, 1903 and September 3, 1912, when there was no double liability attached to any corporate stock. The liabilities under discussion in that case arose between the 1st of January, 1903, and May 2nd, 1903, before the Constitution of 1851 had been amended, and the court held that under the Constitution as it existed before repeal and the statutes, the liability of the stockholder attaches at the time the liability is incurred by the corporation. If the claim of the plaintiff-appellee that after the amendment of the Constitution effective July 1st, 1937, there is no power to enforce stockholders' liability for debts incurred prior to the amendment is sound, then the court could have disposed of this case by the simple statement that the Constitution is **no** longer in effect and that therefore no liability could be enforced.

**Sec 28 of Article II of the Ohio Constitution** provides that the "General Assembly shall have no power to pass retroactive laws and laws impairing the obligation of contracts", and while it may be urged that while the Legislature is forbidden to do this, the people through their Constitution may do so under the reserve authority **of §2 Article XIII.** However, a further discussion of this point is unprofitable.

**Baumgardner v State ex Fulton, 48 Oh Ap 5,** is a very well considered case involving many questions in relation to insolvent banks and was decided on April 20, 1934 after **§3 of Article XIII** had been amended in reference to banks. It holds,

"(11) The stockholders of a bank are liable on their superadded liability for all the debts and obligations of the bank no matter when contracted. **§§2 and 3, Article XIII, Constitution.**"

On page 33 of that case under query 10, "Under the provisions of **§2 of Article XIII of the Constitution,** reserving power in the state to alter or repeal laws relating to corporations, the imposing of double liability on the stockholders of banking corporations under the provisions of **§3 of Article XIII** had the effect of imposing liability on such stockholders or all the debts and obligations of the bank no matter when contracted."

We believe these cases definitely sustain our view that the repeal of the constitutional liability effective July 1st, 1937, does not deprive the court of power to enforce constitutional liability on account of obligations which arose prior to the date of appeal.

Attached to the brief of the defendant-appellant is an opinion of Herbert S. Duffy, Attorney General, in which he discusses at length a question submitted to him by the superintendent of Building & Loan Associations as to whether in view of the amendment of **§3, Article XIII** effective July 1, 1937, actions to assess the liability must be brought prior to July 1, 1937, and other kindred questions. After a lengthy examination of the matter the Attorney General reports the following conclusions:

"(1) In the case of a Building & Loan Association now in liquidation liability assessments do not have to be made prior to July 1, 1937.

"(2) The court action does not have to be started prior to July 1, 1937.

"(3) ' Therefore liability can be assessed at such time as future appraisals may show necessity for such an assessment."

Counsel for plaintiff-appellees in their brief, pages 11, 12, and 34-40 present their views quite vigorously. We are somewhat surprised that the research of all counsel and the court in this matter has disclosed such a dearth of clear-cut decisions upon this point. Counsel for plaintiff-appellee point to the case of **Allen v Scott, 104 Oh St 437**, in which it is held that a banking institution incorporated while there was no superadded liability of stockholders becomes subject to the amendment of 1912, and they argue quite logically that inasmuch as the passage of the new amendment imposed a liability upon stock issued when such amendment was not in force, without being violative of the provisions of §10, Article I of the Federal Constitution, providing that no state shall pass any law impairing obligations of contracts, that it must follow logically that the amendment to the Constitution repealing the provision imposing double liability does not violate the Federal Constitution. Possibly, a good answer to this argument is that giving additional security to a creditor over what he had before the amendment does not violate the Federal Constitution. They also rely upon the case of the United States of America v Claude Chambers, 89 A.L.R., 1510, wherein the Supreme Court of the United States through Hughes, C.J., announces the law to the effect that the unqualified repeal of the 18th Amendment deprived the courts of jurisdiction to entertain any further proceedings in impending prosecutions under the Prohibition Act even where the crime was committed before the repeal and while such Act was in effect. We have no difficulty in distinguishing this case from the case at bar and it clearly does not involve the Federal or State Constitution in reference to violating contracts. The entire structure for the prosecution of those charged with violating Federal liquor laws was built upon the existence of the 18th Amendment, and when that was repealed every law passed under its authority fell with it, except as the same were preserved to the states in the amendment itself. We are of the opinion that under §3, **Article XIII** the double liability arose from the contract entered into between the stockholder and the creditor and that even under the reserved power of §2, **Article XIII** this contract can not be violated by an amendment depriving the creditor of the security afforded by the double liability provision in force at the time the debt was contracted.

Counsel for plaintiff-appellee has kept constantly before the court that there is now no outstanding stock held by those to whom the plaintiffs had transferred their stock and that consequently no liability could attach to the former stockholders' through the intervention of a stockholder who was insolvent and whose insolvency imposed the obligation upon the former stockholder to discharge the obligation he had originally assumed when the corporation became indebted. At first blush there seems to be much in this position, but after examining the cases we are of the opinion that the surrender of the stock to the corporation, whereby in effect the corporation purchased its own stock, does not make a different case than that which would have arisen, had the stock been sold by the former stockholder to purchasers who could not respond by reason of insolvency. If it were otherwise an easy way would have developed to escape stockholders' liability by simply surrendering the stock, either as a gift or as a sale either for cash or on credit. The stock having been issued and having been held by the stockholder and a debt having been incurred the stockholders' obligation arose and is not discharged until the debt is paid under the principles heretofore pointed out.

### CLAIM OF AMICI CURIAE

Amici curiae are insistent upon a proposition that the plaintiff in this case occupies a different position from the ordinary creditor in that he was a former stockholder and sold his stock to the corporation and that the debt of the corporation due him as such former stockholder could not be discharged until all other creditors were satisfied. Counsel devotes many pages to this proposition. In our judgment the answer is that it is admitted by the superintendent that the plaintiff is a creditor and that his claim has been allowed as such. We can not go behind this and hold that his claim is different from the claim of any other creditor. They are all allowed under the same schedule and no right is asserted to withhold a dividend because the claim is of a different quality from that held by others except that it may be subject to a stockholders' liability and that the superintendent has a right under the statute to withhold it until he has deter-

mined whether such liability must be assessed.

## CONCLUSION

### CAN THE SUPERINTENDENT WITHHOLD A DIVIDEND FROM ONE NOT NOW A STOCKHOLDER?

We have examined at great length the decisions of Ohio and have arrived at and have announced our conclusion in reference to the liability of the plaintiff who was once a stockholder but has not been such since 1931 and we must now solve the question as to whether or not the superintendent, under the statute, has a right to withhold from him his dividend on his allowed claim to cover his possible stockholders' liability. The defendant states in the amended answer that by virtue of §687-10, par. 9, GC, he is required to enforce the individual liability of each shareholder as it may exist, if he ascertains that the assets of said association will be insufficient to pay its debts and it is also stated that the defendant believes that the assets probably will be insufficient to pay the debts and that he will therefore be required to enforce the individual or superadded liability of the stockholder.

The plaintiff on January 2, 1931, became a creditor and on that day ceased to be a stockholder. Seven years have elapsed since the surrender of his stock and during that time there has been much activity in this association. New stockholders have come and gone. Old creditors have been paid and new creditors have arisen. The plaintiff is not liable to any one who was a creditor at the time he held his stock, but who has since been paid at any time or in any manner.

He is not liable to any one who has become a creditor since January 2, 1931. He is not liable to any one who was a creditor on January 2, 1931, and is still a creditor until the assessment against all present solvent stockholders has been applied to the payment of such creditors, and there is yet an amount due.

He is only liable in proportion to the stock held by him at the time he was a stockholder to those who were then creditors, less what may have been since paid them and then only after those creditors have had applied to their claims all the funds that can be collected from the present stockholders.

The rule is stated in **Huston v Hull, 75 Oh St. 502.** See **Harpold v Stovar(, 46 Oh St 397; Peters v Mfg. Co., 57 Oh St 161.**

### AUTHORITY OF SUPERINTENDENT TO WITHHOLD DIVIDEND

We have made close search to ascertain the source of the alleged authority of the superintendent to withhold dividends. The defendant has been in charge of this corporation since March 25, 1933, and has not yet determined that there is any stockholders' liability necessary and he should be required to show clear statutory authority for withholding all dividends to which the plaintiff is entitled and which now have been paid to other creditors to the extent of 50%. The plaintiff's powers and limitations so far as Building & Loan Associations, in the condition of the one under examination, are prescribed in §§687 to 687-21 GC. We have carefully read all these sections and detect generally power not greatly different from that bestowed upon a receiver in winding up an insolvent corporation, although there are many sections specifically relating to Building & Loan Associations.

Sec 687-10 GC enumerates certain powers and authority of the superintendent and Par. 9 of such sub-section provides:

"If he ascertains that assets of such association will be insufficient to pay its debts and liabilities, to enforce such individual liability of each shareholder as may exist."

Sec 687-15, GC directs the payment of dividends and provides,

"Dividends due to shareholders on claims as depositors or otherwise to the extent of the individual liability of such shareholders shall be withheld by the superintendent until it is ascertained that it will not be necessary to enforce their individual stock liability."

No final dividend shall be paid until after the final disposition of all claims.

Par. 9 of subdivision 10 gives the commissioner power to enforce such individual liability of each **shareholder** as may exist. What is the meaning of "each shareholder?" Does it mean those who are shareholders at the time when the superintendent took control and asserts that the assets will be insufficient or does it mean former shareholders who have long since ceased to be such but who may be contingently liable after the present assets have been applied to creditors and the present stockholders exhausted? The same question

arises when we read the part of §687-15, GC, which provides "dividend due to share-holders". Does the statute limit the dividends that may be withheld from present shareholders to the extent of the individual liability of such present shareholders, or does it include dividends that are due to former shareholders who are not now such?

One other phrase appears in both of these sections which must be examined.

In par. 9 the power is to enforce such individual liabilities of each shareholder as may exist. And in subdivision 15 the phrase is used "to the extent of the individual liability of such shareholder." It is clear that under these provisions limiting the collection to the "extent" of the individual .liabilities and to the liability "as may exist" the superintendent under the broadest construction of the statute would have only the right to collect the liability that ultimately attaches to the former stockholder and which, due to the lapse of time, will presumably be greatly different from the liability of the present stockholder.

However, when we consider that the entire purpose of the Act is to take possession of, manage, control, rehabilitate, reorganize or liquidate the association, we can not escape the conclusion that unless one comes clearly with in the provisions of the statute that it was not intended to determine remote and complicated questions before the main purpose of the statute is accomplished. .

The plaintiff in this case, but for the statute, would clearly have a right to an equal distribution with other creditors who have received already 50% of their claims. The provision is in derogation of such right and should be strictly construed. In both sections alluded to and in other sections the word "shareholder" is used without qualification or amplification. It does not describe or allude to a former shareholder, no longer such. The plaintiff in this case is not a shareholder. His liability is remote and contingent, and to extend the power to the superintendent to hold up his dividend, an unusual proceeding in itself, seems to us beyond the purpose of the statute. The superintendent has the same right to secure the payment of his claim before and after it has been reduced to judgment as has any other creditor against any other debtor and these he may exercise in the same way.

We are therefore of the opinion that the court below committed no error in finding that the amended answer does not

state a defense, that the demurrer is well taken and that the plaintiff is entitled to the relief prayed for and to have distributed to him liquidation dividends to the same extent as have been or may be ordered paid to the holder of allowed deposit creditors' claims, and that a mandatory injunction should issue for the payment of such claims. Of course we do not base our judgment on the same reasoning as the court below, but that does not render the final order of the court erroneous.

We are also of the opinion that the order made by the Court of Common Pleas to withhold dividends does not and can not properly refer to the dividend due to this . plaintiff.

Judgment accordingly. Same judgment in other kindred cases.

BARNES, PJ, and HORNBECK, J, concur.